180 N.J. Super. 581 (1981)
435 A.2d 1198
MARTHA E. HEROLD, PLAINTIFF,
v.
JENNIE INMAN, DEFENDANT.
Superior Court of New Jersey, Law Division Camden County.
Decided September 9, 1981.
*583 Raymond Kassekert for plaintiff.
A. Michael Barker for defendant.
DAVIS, J.S.C.
This is an action brought by an uninsured motorist against an individual tortfeasor seeking to recover hospital and other medical expenses plus loss of wages arising from the alleged negligence of defendant in the operation of her vehicle. Plaintiff is proceeding on an alleged common law right of recovery. Defendant raised an affirmative defense of discharge due to plaintiff's execution of a release in full, and the defense that plaintiff failed to state a cause of action upon which relief could be granted because there no longer exists a common law right of recovery for personal injury protection (PIP) type benefits because of the enactment of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq.
The case was tried as to liability only; therefore, the issue of fault on the part of each party will be determined before considering the proper interpretation of the Reparation Act or the release executed by the parties.

I. Liability
On May 13, 1978, at about 7:20 a.m., plaintiff operated her vehicle in a generally eastwardly direction on Haddon Avenue in the Borough of Collingswood, New Jersey. As she approached at 15 to 20 miles an hour the intersecting street of Bellevue Terrace, which was to her right, she observed defendant's vehicle on Bellevue Terrace proceeding toward her. It was admitted by defendant that Bellevue Terrace was controlled by a stop sign. Plaintiff did not observe whether defendant disregarded the stop sign. She could only state that when she first saw defendant, defendant was about 3 1/2 feet from the stop sign, at which time defendant was looking to the right away from her and toward Route 130.
*584 Defendant testified that she first looked to her right toward Route 130, looked to her left but did not see anything, looked to the right again and then "just stepped on the gas to go and there she was in front of me." At the point of impact plaintiff had nearly cleared the intersection. Her vehicle was struck at its right rear fender. Plaintiff testified that she swerved to the left to try to avoid the incident but couldn't go any farther because of a pole.
From these facts it must be concluded that the failure of defendant to make proper observations to her left, which would be the area from which danger would have more readily appeared, was negligence and that this negligence was the proximate cause of the collision and resulting expense plaintiff now seeks to recover. These facts also dictate the conclusion that the conduct of plaintiff was free of any fault which could be said to be a proximate cause of this accident.

II. Release
Before this action was instituted plaintiff, through her attorney Edward J. Brady, settled with defendant for $5,499.81, which was allocated as $999.81 for all property damage and $4,500 for all other items except hospital bills, doctors' bills and other medical expenses, admittedly in excess of $1,400. Defendant, however, reserved the right to question their reasonableness if a trial as to damages is necessary.
The settlement negotiations were between Mr. Brady, plaintiff's attorney, and Mr. St. Pierre of Aetna Casualty & Surety Company. When the values were agreed upon, St. Pierre mailed a "release in full" to Brady, the relevant portions of which are as follows:
... I, Martha Herold ... for the sole consideration of FIVE THOUSAND FOUR HUNDRED NINETY-NINE and 81/100 DOLLARS, to me in hand paid by Jennie C. Inman have released and discharged ... the same Jennie C. Inman ... from all claims, demands, damages, actions, or causes of action, on account of damaged property, bodily injuries or death, resulting, or to result from an accident to property damage and bodily injuries which occurred on or about the 13th day of May, 1977 by reason of automobile accident.
*585 Prior to receiving this release plaintiff's attorney negotiated with plaintiff's carrier for the purpose of recovering her PIP type benefits. The insurance carrier indicated that it would disclaim.
Upon the receipt of the release from St. Pierre, Brady requested permission of St. Pierre to insert additional language in the release because of the difficulty in getting PIP recovery from plaintiff's carrier. St. Pierre testified that he told Brady that the exception made no difference to him and that he had no objection to the additional language. Then he testified that Brady was trying to reserve a right of recovery against his company for PIP coverage and that he (Brady) told him that he didn't think his company was responsible. After this colloquy Brady added the following words to the release: "This does not include any PIP benefits which undersigned may be entitled." The release was then fully executed and returned to Aetna Casualty & Surety Company, at which time a check was submitted to Brady for the total amount set forth above.
Subsequently, plaintiff instituted an action against her own carrier seeking to recover her PIP benefits. Plaintiff was denied a right of recovery by way of a motion for summary judgment.
As a result of this action plaintiff's counsel contacted Aetna's agent seeking recovery of medical expenses and loss of wages (PIP-type benefits). Defendant's agent denied responsibility and asserted the execution of the release in bar of such claim. Plaintiff then filed this action.
Defendant has basically argued that Brady is a lawyer and that any words used by him on behalf of his client should be construed very strictly, and that a strict construction would mean that the exception set forth in the release is of no effect because of the disclaimer by plaintiff's carrier. I respectfully disagree.
Whether the words are to be strictly or liberally construed is not the answer so long as the construction given comports *586 favorably and reasonably with the normal meaning of the words used in the context of all of the surrounding facts.
Certainly, more than one construction can be given to the language used and that is why testimony was allowed about the circumstances surrounding the final execution of the release and the insertion of the exception. International Signal Co. v. Marconi Wireless Tel. Co. of America, 89 N.J. Eq. 319 (Ch. 1918), aff'd 90 N.J. Eq. 271 (E. & A. 1919).
It became very clear, during the arguments of counsel and from a reading of the affidavits submitted by both parties in support of and in opposition to previously filed but undecided motions for summary judgment, that there was doubt as to the status of the law at and prior to the complete execution of the release. As a result of that doubt and because of the possibility of disclaimer by plaintiff's carrier, plaintiff's lawyer wanted to make an exception to the release in full.
A general release, not restricted by its terms to particular claims or demands, ordinarily covers all claims and demands due at the time of execution and within the party's contemplation. Bilotti v. Accurate Forming Corp., 39 N.J. 184 (1963). This release in full or general release was restricted in its terms.
PIP benefits are no more than medical expenses and lost wages, normally recoverable from a defendant prior to an enactment of N.J.S.A. 39:6A-1 et seq. but now recoverable from plaintiff's carrier if plaintiff has one. Taking into account the fact that both parties had knowledge of the possibility of disclaimer at the time of the insertion of the exception, the language of the exception seems to say no more than "If I don't collect from my carrier I want to collect from the defendant."
Defendant, inferentially at least, contends that the words mean that if plaintiff isn't successful in getting a recovery from her carrier, there is no further liability and that she has been released in full. This contention is illogical because it emanates from a strained interpretation of the true and obvious meaning of the words used. This is especially so in the light of the testimony of Brady and St. Pierre.
*587 The use of the phrase "PIP benefits" can only be construed as being descriptive of the type of expenses sought to be recovered and excluded from the effects of a full release; otherwise, the exception would be meaningless.
The phrase "to which she may be entitled" can only reasonably mean that which she may be entitled to collect from defendant, if not collectible from her carrier. It was admitted during argument of counsel that plaintiff could not collect from defendant if she were successful in being compensated by the carrier, or otherwise there would be a double recovery which is categorically denied the plaintiff by the statute.
However, it should now be clear that if she were not successful, she did not want to foreclose her right to collect from defendant.
Therefore, I conclude that plaintiff has fully released defendant Inman from all liability except for those medical expenses and lost wages she may be entitled to upon the proper submission of proofs.

III. Statutory Construction
This portion of the case presents a novel issue of statutory construction involving New Jersey's personal injury protection (PIP) law, the Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq. The question is whether the operator of an uninsured motor vehicle continues to have a common law cause of action against a tortfeasor for PIP-type benefits. Plaintiff contends that the act does not abrogate the traditional negligence cause of action. Defendant urges that the statute was intended to deny recovery to such persons as a sanction for noncompliance with compulsory insurance provisions.
The issue regarding the common law right of recovery has been addressed only once by New Jersey courts, and then only peripherally. See Mokienko v. Greenan, 178 N.J. Super. 657 (Law. Div. 1981). To decide the question, it becomes important to ascertain the true purpose of the no-fault legislation in New Jersey. The history of the PIP law is important in "giving *588 effect to the legislative intent." Gambino v. Royal Globe Ins. Cos., 86 N.J. 100, 105 (1981).
The PIP statute enacted by L. 1972, c. 70, "encompasse(d) the recommendations of the Automobile Insurance Commission created under Joint Resolution 4 of 1970." Sponsor's Statement to L. 1972, c. 70. The Commission's major concerns were reflected by its legislative recommendations:
1. The prompt and efficient provision of benefits for all accident injury victims (the reparation objective).
2. The reduction or stabilization of prices charged for automobile insurance (the cost objective).
3. The ready availability of insurance coverage necessary to the provision of accident benefits (the availability objective).
4. The streamlining of the judicial procedures involved in this third-party claim (the judicial objective).
Of particular importance are the reparation and judicial objectives.
The reparation objective was envisioned to insure prompt reimbursement to injured persons without the necessity of proving fault. Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 386 (1977); Hagains v. Government Employees Ins. Co., 150 N.J. Super. 576, 580-581 (Law Div. 1977); Iavicoli, No Fault and Comparative Negligence in New Jersey, 89 (1973). The law required prompt payment of medical expenses, lost wages, essential services, survivor benefits and funeral expenses to certain classes of persons injured in automobile accidents. N.J.S.A. 39:6A-4 and 39:6A-5.
The judicial objective was designed to minimize resort to the judicial process, to provide insureds with prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation. Gambino v. Royal Globe Ins. Cos., supra, 86 N.J. at 107.
In this case it is clear that because plaintiff was an uninsured operator, she is not entitled to participate in the scheme created by the Legislature without proof of fault or quickly collecting her medical expenses and loss of wages. Consequently, if she is *589 to recover those benefits to which she would have been entitled if she had coverage, she must now look to her normal common law remedy unless the same has been barred by the enactment of N.J.S.A. 39:6A-1 et seq.
As did the court in Mokienko v. Greenan, supra, I feel that an unjust result would be achieved if the act were interpreted to deny recovery to uninsured motorists for PIP type losses as a sanction for noncompliance with compulsory insurance provisions. Specific sanctions have been legislatively prescribed for failure to maintain compulsory automobile liability insurance. These sanctions include fines, imprisonment and loss of driving privileges, N.J.S.A. 39:6B-2. If the loss of PIP type benefits was intended as an additional penalty for noncompliance, the Legislature would have included that result in the violation and penalties section of N.J.S.A. 39:6B-2.
It must be concluded that the Legislature was content with the sanctions and penalties explicitly delineated in the act. It is not the function of the court to create penalties where the Legislature has already considered them. Ortiz v. Safeco Ins. Co., 136 N.J. Super. 532 (Law Div. 1975), mod. on other grounds, 144 N.J. Super. 506 (App.Div. 1976).
Certainly, an analysis of the penalty sections of the statute can assist us in ascertaining the intent of the Legislature, but it is incumbent upon the court to peruse the entire statute to see if some other part thereof sheds additional light upon the legislature's intent. N.J.S.A. 39:6A-8 (tort exemption; limitation on the right to damages) seems to be the most appropriate section with respect to this issue. The section in relevant part states that
Every owner, registrant, operator or occupant of an automobile to which section 4 ... applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for damages to any person who is required to maintain the coverage mandated by this act, or to any person who has a right to receive benefits under section 4 of this act as a result of bodily injury, arising out of the ownership, operation in this State, if the bodily injury is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof *590 for the reasonable and necessary treatment of such bodily injury, is less than $200.00 exclusive of hospital expenses, X-rays and other diagnostic medical expenses. There shall be no exemption from tort liability if the injured party has sustained death, permanent disability, permanent significance disfigurement, permanent loss of any bodily function or loss of a body member in whole or part, regardless of the right of any person to receive benefits under Section 4 of this act. [Emphasis supplied].
Defendant has contended that the entire chapter has the affect of abrogating a plaintiff's common law right of recovery for medical expenses, loss of wages, etc., if plaintiff is without insurance as required by the statute.
Section 8, supra, at least by title, clearly concerns itself with what limitations the Legislature has imposed upon plaintiff's common law right to recover damages.
If we were to conceive of our present body of common law in this case as an unopened loaf of bread, it would appear that this section of chapter 6A only removes one slice from the loaf. This one slice is represented as being soft tissue injury cases where medical expenses, etc., are under $200.
This portion of the statute which exempts a defendant from responsibility is clearly a derogation of a plaintiff's common law right of recovery in a tort action.
A statute in derogation of common law must be strictly construed, and the common law must be held no further abrogated than the language of the statute absolutely requires. Lamanna v. Kennedy, 130 N.J.L. 223 (Sup. 1943).
The exemption or bar to recovery in this case does not apply because it has been admitted that the medical expenses, etc., are in excess of $200. Plaintiff, therefore, still retains all of her common law rights pertinent to this action unless there are other areas of the statute which take away her right of recovery. I can find no other area which is a limitation on plaintiff's right, other than N.J.S.A. 39:6A-12. The effect of § 12 upon an uninsured motorist's right of recovery has been fully covered in Mokienko v. Greenan, 178 N.J. Super. at 657. It was determined in that case that the common law right of recovery still existed.
*591 Finally, support for this conclusion may be found in a review of the no-fault legislation in Massachusetts, after which our legislation was fashioned. Under the Massachusetts No-Fault Insurance Plan, common law and statutory concepts of liability, when an action in tort is allowable, remain unchanged. Blashfield, Automobile Law and Practice (3 ed. Supp. 1979-80), § 275.4. Consequently, a suit by or against injured persons who are excluded from recovering no-fault benefits may still be brought for recovery of damages. Id. at § 275.16.
As the New Jersey Automobile Reparation Act modifies a common law cause of action, it must be strictly construed. State v. Common Pleas Court, 1 N.J. 14, 22 (1948).
Plaintiff may, therefore, recover the amounts which would have been collectible if she had had personal injury protection coverage.