201 N.J. Super. 321 (1985)
493 A.2d 40
ROBERTA M. LISI, PLAINTIFF-RESPONDENT,
v.
JAMES N. PARNELL, JR., INDIVIDUALLY AND T/A PARAMOUNT CAB INC., AND RANDY J. HARRIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 1984.
Decided May 6, 1985.
*322 Before Judges McELROY, DREIER and SHEBELL.
James D. Martin argued the cause for appellant Harris (Lynch, Mannion, Martin, Benitz & Lynch, attorneys; James D. Martin, on the brief).
Steven Kessel argued the cause for respondent (Drazin & Warshaw, attorneys; John R. Connelly on the brief).
The opinion of the court was delivered by McELROY, P.J.A.D.
The question presented by this appeal is whether the legislative scheme of the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., more commonly called the no fault law, prohibits an uninsured motorist from proving medical expenses when suit is brought against insured defendants for injuries received in an automobile accident. The issue has been answered affirmatively in two reported law division decisions but we are informed that other law division judges have reached a contrary result in at least two unreported bench decisions. We granted leave to appeal because of this conflict.
On July 23, 1981 plaintiff was injured when her automobile collided with one owned by defendant Parnell and operated by defendant Harris. Plaintiff was an uninsured motorist in violation of N.J.S.A. 39:6A-3 and 4 and N.J.S.A. 39:6B-1 and 2 which require all owners of automobiles registered or principally garaged in this state to be at least minimally insured for liability and for personal injury protection (PIP). Plaintiff sued defendants for personal injury and for property damage. Defendants unsuccessfully moved to exclude from trial any proof of the medical expenses plaintiff incurred as a result of her injuries. We granted defendants leave to appeal from the order denying their motion.
The decision in Mokienko v. Greenan, 178 N.J. Super. 657 (Law Div. 1981) permitted an uninsured motorist to prove such expenses. The judge did so primarily on the ground that since *323 the uninsured could not legally claim personal injury protection benefits under N.J.S.A. 39:6A-4 and 10, her medical expenses and other special damages were uncollectible and thus not barred by N.J.S.A. 39:6A-12. In Herold v. Inman, 180 N.J. Super. 581 (Law Div. 1981) the plaintiff apparently was insured but, for reasons not disclosed in the opinion, her medical claims were held uncollectible under her PIP coverage in a separate action against her own insurance carrier. Id. at 585. She was permitted to recover those expenses in an action against the owner-operator of the other automobile. Both decisions, in part, turn upon consideration whether the No Fault Law as an act in derogation of common law should be strictly construed to permit the viability of the prior common law right to prove such expenses. Mokienko, 178 N.J. Super. at 661; Herold, 180 N.J. Super. at 589-91. Each of these decisions regarded a denial of the assertion of the common law right to sue for medical expenses and other PIP benefits as a "sanction" not specifically mandated by the no fault act and therefore one not to be judicially grafted upon the statute. Mokienko, 178 N.J. Super. at 661; Herold, 180 N.J. Super. at 589. See N.J.S.A. 39:6B-2 (sanctions for driving without the liability coverage mandated by N.J.S.A. 39:6B-1 include fines, imprisonment and loss of driving privileges); Milcarek v. Nationwide Ins. Co., 190 N.J. Super. 358 (App.Div. 1983) (court refused to allow a claim for punitive damages to an insured in a suit for overdue payment of personal injury protection benefits due under N.J.S.A. 39:6A-4 and 5 on the ground, among others, that the 10% interest penalty prescribed by N.J.S.A. 39:6A-5 on overdue PIP payments and the penalties set by N.J.S.A. 17:29B-5, 6 and 7 for unfair claim-settlement practices under N.J.S.A. 17:29B-4(9)(d) provided sufficient remedy).
The parties to this appeal focus attention upon N.J.S.A. 39:6A-12 as partially determinative of the issue presented. That section, as it existed at the date of the accident, provided:
Inadmissibility of evidence of losses collectible under personal injury protection coverage

*324 Evidence of the amounts collectible or paid pursuant to sections 4 and 10 of this act to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
Appellants argue that the no fault law mandates that all automobiles principally garaged in this state be at least minimally covered for liability insurance, N.J.S.A. 39:6A-3, and for the PIP benefits required by N.J.S.A. 39:6A-4. They point to the sponsor's statement accompanying the no fault law when it was passed in 1972 and its acknowledgement that the act encompassed the recommendations of the Automobile Insurance Study Commission, created under Joint Resolution 4 of 1970 for the express purpose of studying and recommending changes accomplishing reparation reform for New Jersey motorists. Appellants rely upon the report the Commission submitted to the Governor and to the Legislature in December 1971 as persuasive as to the legislative intent of the no fault law generally and particularly N.J.S.A. 39:6A-12.
Distilled to their essentials, the major arguments made by appellants are that one of the principal objectives of the no fault law is the "judicial objective" recognized in Herold, 180 N.J. Super. at 588; i.e., streamlining of the judicial procedures involved in the presentation of third party claims, an objective they assert is realized in the exclusion by N.J.S.A. 39:6A-12 of "amounts collectible or paid" pursuant to section 4 of the act. They also contend that another legislative objective recognized in Herold is achieved by the evidential exclusion in section 12, i.e., "the reduction or stabilization of the prices charged for automobile insurance (the cost objective)." Ibid. Appellants tie this objective to the statement in the commission report that
[w]ith respect to more serious cases which eventually may reach the courts, the recommendation regarding admissibility of evidence ... is expected to have a leveling effect on verdicts or settlements. Under that rule, injured persons shall not plead or introduce into evidence in an action for damages against a tortfeasor those damages for which PIP benefits are available. [Automobile Insurance Study Commission Report to the Governor and The Legislature on Reparation Reform for New Jersey Motorists at 134a (December 1971) Commission Report.] [Emphasis by appellants.]
*325 From these bases, appellants argue that the exclusion from evidence at trial by section 12 of "amounts collectible ... pursuant to section 4 ... of this act" must be read as excluding the common law right of an uninsured plaintiff to prove medical expenses incurred because to hold otherwise would undercut not only the "judicial objective" of the no fault law by increasing judicial workload but the "cost objective" as well by increasing liability loss factors to insurers and ultimately by increasing the premium burden on those who obey the law and maintain the coverages required by N.J.S.A. 39:6A-3 and 4 and N.J.S.A. 39:6B-1. Finally, appellants contend that the denial to an uninsured of the right to prove special damages does not amount to a sanction, rather the uninsured is merely denied benefits to which she would have been entitled had she obeyed the law and had purchased the required insurance.
We acknowledge that the latter argument has an alluring quality. Despite the concern exhibited by the judge in Mokienko that the statute should not be read "to bar any recovery for injuries allegedly suffered but unredressed," 178 N.J. Super. at 660, an expression engendered, we are sure, by the natural sympathy we all have for one who is injured, it is difficult to maintain sympathy for one whose refusal to insure may increase premium costs to those who obey the law. Clearly, the Legislature intended speedy redress for economic loss to be available under the no fault law and all that is required to make it "collectible" is to maintain the insurance coverage mandated. There is beguilement, indeed a degree of just retribution, in an approach that leaves a law-breaker without a remedy. This was the tack taken by one of the two unreported bench decisions we have reviewed. That judge held that the denial of the right to an uninsured motorist to present special damages at trial was not the imposition of a sanction not prescribed by the Legislature, rather, it was a recognition that uninsureds "simply cannot recover because they've not obtained the required insurance." Similarly, the second judge held his denial of the common law right was "simply the ramifications of a person's *326 own voluntary act, voluntary decision not to be insured." Although we recognize the persuasive force of this view, unfortunately, as we will develop, we cannot adopt that course of action.
Granted, motorists who voluntarily avoid purchasing or maintaining mandated insurance coverages are irresponsible. They create a serious societal problem recognized as such by the study commission's 1970 report which cited statistical tables demonstrating that in 1969 nearly 10% of the 3,000,000 automobiles then registered in this state were uninsured. Commission Report at 63-64. Only 85,000 owners in that group bothered to contribute to the Unsatisfied Claim and Judgment Fund. Id. at 27-29. The report also presented figures indicating that accident claims averaged 2.7 per 100 registered automobiles at an average claim value of $1,670. Id. at 28. It noted a possibility that as to uninsured motorists this data might be inaccurate because it was possible that such motorists produce a higher than average claim frequency and claim cost. Ibid. Nevertheless, utilizing the 1969 normal averages for the number and dollar value for claims the report calculated an anticipated annual average of 5,616 uninsured claims and "a victim loss of $9,400,000 which is uninsured so far as motorist membership in and contribution to the New Jersey overall reparation system is concerned." Ibid. The report continued as follows:
This uninsured gap takes on added significance when considered from the viewpoint of no-fault legislation. The reparation purpose of a no-fault program is to assure all victims ready claims eligibility through first-party coverage written on the accident car itself. In New Jersey, with nearly 300,000 uninsured cars  not counting those in the Fund (which is in effect a satellite third-party reparation system)  such a program would fail to achieve its purpose by a considerable margin.
The eventual recommendation of the Commission to the Legislature was that a law compelling all motorists to insure as a condition of registering their cars should be very seriously considered as a part of the reparation objective.
*327 The legislative response was the enactment of N.J.S.A. 39:6A-3 and 4 and of N.J.S.A. 39:6B-1 compelling liability and PIP coverage for every automobile "registered or principally garaged in this State," and N.J.S.A. 39:6B-2 which imposed penalties of fines, imprisonment and suspension of driving privileges for those who failed to obtain and maintain the required coverage.
Notably absent, however, from the study commission's report and from the no fault law thereafter enacted is that which defendants seek to have us create by implication; a denial to uninsured motorists of the common law right to seek recovery of special damages. This we cannot do. Settled principles prevent such a course of action. It is fundamental that "[a] statute may take away a common law right; however there is a presumption that the Legislature had no such intention" and "[i]f a change in the common law is to be effectuated, the legislative intent to do so must be clearly and plainly expressed." DeFazio v. Haven Savings and Loan Ass'n, 22 N.J. 511, 519 (1956).
The Legislature's use of the word "collectible" in N.J.S.A. 39:6A-12 is too flimsy a fulcrum to use to lever that section of the no fault law to the level of a cut-off of such a basic common law right. We agree with Judge Rosetti's analysis of section 12 in Mokienko; that section has as its purpose the prevention of double recoupment of both PIP benefits and common law recovery of those same losses. 178 N.J. Super. at 659-660. There is in that section no expression, clear or otherwise, of a legislative intent to affect the right of one not legally entitled to PIP to sue to recoup special damages incurred as a result of injury.
The only clear expression of legislative intent to preclude common law rights appears in section 8 of the no fault law. N.J.S.A. 39:6A-8. That section exempts "[e]very owner, registrant, operator or occupant of an automobile to which section 4, personal injury protection coverage, regardless of fault, applies, *328 and every person or organization legally responsible for his acts or omissions ... from tort liability for damages to any person who is required to maintain the coverage mandated by this act." However, the tort liability exemption of this section as it existed on the date of the instant accident was limited to cases where "the bodily injury is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof for the reasonable and necessary treatment of such bodily injury is less than $200, exclusive of hospital expenses, X-rays and other diagnostic medical expenses."[1] Clearly, this section did not abrogate an uninsured motorist's common law right to recover direct, consequential or special damages except, and this applies to insured motorists as well, in the circumstance where the $200 "threshold" was not reached. We agree with the analogy used by Judge Davis in Herold. He opined:
[i]f we were to conceive of our present body of common law in this case as an unopened loaf of bread, it would appear that this section of Chapter 6A only removes one slice from the loaf. This one slice is represented as being soft tissue injury cases where medical expenses, etc., are under $200. [180 N.J. Super. at 590].
The order entered May 30, 1984 denying defendants' motion to exclude from trial proofs of plaintiff's medical expenses is *329 affirmed. The case is remanded for trial. Jurisdiction is not retained.
NOTES
[1] This section was amended by L. 1983, c. 362 § 14, effective October 4, 1983. Subsection a of the amendment retained the $200 soft tissue basis for the tort liability exemption but limited that exemption to "noneconomic loss to a person who is subject to this subsection and who is either a person who is required to maintain the coverage mandated by this act, or is a person who has a right to receive benefits under section 4 of this act...." (Emphasis ours.) Subsections a and b were declared alternative elective "tort options" and were linked to a newly created section 8.1, N.J.S.A. 39:6A-8.1, which implemented the amended section 8 by stating the method of election, those to whom the tort option elected shall apply and the rule to be applied where more than one policy is applicable to the named insured or immediate family member, and the policies have different tort options. We need not address these amendments nor consider their ramifications. The legal briar patch created by these amendments shall remain unexplored and must await cases which directly present such questions; our decision is limited to the act as it existed in 1981.