No. 38,944

MILDRED L. HUGHES, et al., *Appellees,* v. G. H. KERFOOT, et al., *Appellees,* and ELIAS E. OWEN, *Appellant.*

(263 P. 2d 226)

Opinion filed November 7, 1953.

*Harry T. Coffman,* of Lyndon, argued the cause, and *Ward D. Martin,* of Topeka, was with him on the briefs for the appellant.

*Alex Hotchkiss,* of Lyndon, argued the cause, and *Paul E. Wilson,* of Topeka, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is a partition action. The appeal is from orders overruling a motion by one of the defendants to make the petition more definite and certain, and his demurrer to the petition and an answer filed by certain other defendants.

Owen Owen, also known as Owen Owens, a resident of Osage county, was a naturalized citizen of the United States. He died intestate on November 20, 1934, the owner of considerable real estate in Osage and Wallace counties. Elias E. Owen, one of the defendants (and hereinafter referred to as appellant), was appointed administrator of his estate by the probate court of Osage

county. The estate was duly administered and closed and the real estate of decedent was assigned to the heirs-at-law shown to be entitled thereto. This action is brought by heirs of an heir of Owen Owen who died subsequent to the latter's death.

The petition alleges that plaintiffs "are residents of the country of England," and lists their correct post-office address in that country. Following a recital of the death of Owen Owen, the property owned by him at the time of his death, and the fact of his estate having been administered in the probate court of Osage county, the petition proceeds to set out the respective interests of the numerous heirs of decedent as tenants-in-common of the real estate owned by him at the time of his death. It then alleges that appellant has continued in the operation and management of the described real estate, paid the taxes thereon, collected all rentals therefrom, but that he has failed to render any accounting of the profits. The prayer is for an accounting by appellant and for partition of the property.

To this petition appellant filed a motion to require plaintiffs to make it more definite and certain by stating whether plaintiffs are citizens of the United States or aliens, and, if the latter, of what country they are citizens, and by stating whether other heirs named as tenants-in-common of the real estate in question are citizens of the United States or aliens, and, if the latter, of what country they are citizens.

This motion was overruled.

Later, a number of defendants filed their answer in which they admitted the allegations of the petition and set out with some detail the deaths of certain heirs of Owen Owen, by virtue of which they (the answering defendants) succeeded to rights in the property in question. The prayer of this answer follows closely the prayer of the petition.

Appellant then filed a demurrer to the petition and answer upon the ground those pleadings did not state facts sufficient to constitute a cause of action. The demurrer was overruled and this appeal followed.

With reference to appellant's first complaint, that the court erred in overruling his motion to make the petition more definite and certain, one short answer is that we know of no statute or other authority, and none has been cited, which requires that in an action of this kind the citizenship of the parties be set out.

However, be that as it may, it is stated in appellant's brief, and

is not denied by appellees, that all of the parties to this action, with the exception of appellant (who is a resident of Osage county), are citizens of and reside in Great Britain, presumably England or Wales. We therefore proceed upon the premise that they are aliens.

The question, therefore, is whether they, as aliens, are entitled to inherit their shares of the Kansas real estate involved in this partition action.

In their briefs the parties have gone into the constitutional and legislative history of the question, but, entirely aside from the fact of lack of time and space insofar as this opinion is concerned, we do not, for the purposes of this case, consider it necessary to make an extended review of the authorities bearing on the question. Those interested are referred to *Johnson v. Olson,* 92 Kan. 819, 142 Pac. 256, L. R. A. 1915E, 327, decided in 1914.

Section 17 of the Bill of Rights of our state Constitution provides that:

". . . The rights of aliens in reference to the purchase, enjoyment or descent of property may be regulated by law."

This provision was adopted in 1888. In 1925, the legislature, insofar as the question before us is concerned, dealt with the matter when it enacted §§ 1 and 2, chapter 209, Laws of 1925, which later became G. S. 1935, 67-701 and 702. They read:

"All aliens eligible to citizenship under the laws of the United States may acquire, possess, enjoy, transmit and inherit real property, or any interest therein, in this state, in the same manner and to the same extent as citizens of the United States, except as otherwise provided by the laws of this state. (67-701.)

"All aliens other than those mentioned in section 1 [67-701] of this act may acquire, possess, enjoy and transfer real property, or any interest therein, in this state, in the manner and to the extent and for the purpose prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise." (67-702.)

Appellees contend that they, being aliens "eligible to citizenship," are entitled to inherit the property in question by virtue of section 701.

Appellant, on the other hand, while asserting that appellees are aliens, contends they are not aliens "eligible to citizenship"; that they fall within the provisions of section 702 and thus can inherit only to the extent permitted by treaty between this country and Great Britain, and in support of this argument refers to a 1900 treaty between the two countries, which, it is conceded, provides in

substance that where, upon the death of any person holding real property within the territories of one of the two countries, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same and to withdraw the proceeds thereof. It is to be remembered that the ancestor, Owen Owen, died in 1934, whereas this action was commenced in 1951, and appellant contends that the treaty permits only a defeasible fee which terminated upon the expiration of three years from date of death, or a reasonable time thereafter.

Appellant also makes some contention that our former escheat statute (G. S. 1935, 22-1315), providing for the escheat, under certain circumstances, of property of an alien dying intestate, has a bearing on the question. The argument is not entirely clear, but we are unable to see how that statute would have any application, if for no other reason than that Owen Owen was not an alien at the time of his death. He was a naturalized citizen of the United States.

It is clear that if appellees are aliens "eligible to citizenship," section 701, *supra,* applies, and they inherit their respective shares of the property involved.

On the other hand, if they are not aliens "eligible to citizenship," then section 702, *supra,* which refers to all aliens other than those who are "eligible to citizenship," would apply, and thus the rights of appellees to "acquire, possess, enjoy and transfer real property, or any interest therein, in this state," would be subject to the terms and extent of any treaty existing between this country and Great Britain.

Narrowed down, therefore, the basic question for determination is whether appellees, as British nationals, are aliens "eligible to citizenship" under the laws of the United States. If they are—the fact would dispose of this appeal.

In contending that they are not, appellant places a narrow interpretation upon the phrase and argues that it means no alien is "eligible to citizenship" until he has proved that he possesses certain racial, residence, moral and political qualifications required by federal law for naturalization—in other words, it is contended the phrase "eligible to citizenship," as used in the statute, is synonymous with being "eligible to naturalization," and that, as the petition and answer contain no allegations to the effect appellees are "eligible to naturalization," the demurrer should have been sustained.

Appellees, on the other hand, urge a broader interpretation of the words "eligible to citizenship," and argue that, as a practical matter, they refer to those classes of aliens who, by virtue of color or racial background, are eligible under our federal law to apply for naturalization.

At the time appellant's demurrer was overruled the trial court filed a memorandum opinion. Inasmuch as it clearly discusses the question and sets forth what we think the law to be, excerpts therefrom are quoted:

"The naturalization act answers this question by excluding from its operation all aliens other than free white persons and certain groups not here involved. Those outside the enumerated classes to whom the act is applicable are denied the benefit of the naturalization procedure and hence are barred from becoming citizens. They are aliens not eligible to citizenship and therefore do not come within the terms of our statutes.

.     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"The demurrant [appellant] contends that an alien is not eligible to citizenship until he has complied with the statutory prerequisites as to residence, declaration of intention, petition and proof. Naturalization is a somewhat lengthy process, requiring among other things five years' residence in this country, of which at least six months must be residence in the state. At what stage of the proceedings does an alien become eligible to citizenship? To carry out demurrant's [appellant's] contention, it cannot be until all of the preliminary steps have been performed. In effect this means that the alien is eligible to citizenship only during the brief interval between the judgment of admission and the taking of the oath by the candidate—usually a matter of a few minutes. As pointed out in *Gorman v. Ry. Co.*, 203 N. Y. S. 632, this position reduces the words 'eligible to citizenship' to an absurdity. It deprives sections 67-701 and 59-511 of all practical meaning and value, and would reduce their application to the infinitesimal number of cases where death suddenly occurs between the adjudication and the oath.

"It seems clear that a distinction must be made between eligibility to citizenship and eligibility to naturalization. This distinction appears to be recognized by the language of Sec. 322.1, Immigration and Nationality Laws and Regulations, which states, 'A person, not a citizen of the United States, in order *to be eligible for naturalization* upon a petition for naturalization' must comply with certain preliminary requirements. Eligibility to citizenship is quite a different thing.

"Webster defines 'eligible' as meaning 'fitted or qualified to be chosen; legally or morally suitable   .   .   .   worthy to be chosen or selected; desirable.' 'Eligible' thus expresses the idea of potentiality rather than of realization. It looks to the future and signifies a present qualification to enjoy prospective rights and benefits contingent not only thereon but also upon something else which must be done preliminary thereto. To illustrate, a person must be more than thirty years of age and have practiced law for at least four years to fill the office of district judge. Many lawyers meet these conditions and they are

therefore eligible to be district judges, but they cannot fill the office until they have put themselves in the way of securing appointment or election to it. So it is with the alien. He is eligible to citizenship if he is a free white person, but he cannot become a citizen until he has the required residence and has taken the necessary preliminary steps. These completed, he is outside the class of aliens and is a citizen. Eligibility means that he has the capacity to become a citizen when he has complied with the regulations, rather than that he actually possesses the right to take the oath and be admitted.

". . . 'Eligible to citizenship' as used in our statutes means capable, as free white persons, of becoming citizens. It does not mean qualified to be naturalized by compliance with the statutory requirements. . . .

"The plaintiffs and the defendant cotenants, being free white persons and nationals of a friendly country, they come squarely within the terms of sections 67-701 and 59-511. Those sections govern their rights and they need not depend upon the terms of the treaty of 1900; and they are therefore not subject to the provisions of Sec. 67-702, *et seq.*" (It is to be noted that sections 67-701 and 702, mentioned by the trial court, refer to G. S. 1935, and that section 59-511 refers to G. S. 1949, the latter section being substantially identical to the two earlier sections which were repealed in 1939.)

In other words, as pointed out by the trial court, there is a distinction between being "eligible to citizenship" and "eligible to naturalization." The former refers to a broad class of aliens who are capable of becoming citizens upon full compliance with federal naturalization laws and regulations. The latter refers to those aliens who not only are eligible to citizenship, but who also have already established their eligibility to naturalization by compliance with federal rules and regulations pertaining to the question. As a practical matter, an alien might be *eligible to citizenship,* and at the same time be *ineligible to naturalization*—due to his moral background or political beliefs.

It is clear that appellees are aliens "eligible to citizenship," and that their rights are not dependent upon or affected by the provisions of any treaty between this country and Great Britain.

The rulings from which the appeal was taken were correct, and the judgment of the lower court is affirmed.