**Eddie R. SURMAN and Arline G. Surman, Plaintiffs,**

v.

**Elvin Royal GRIEBEL, John Does I through John Doe V, Black Company and White Company, Defendants.**

Civ. No. R–77–0027 BRT.

United States District Court, D. Nevada.

Oct. 11, 1977.

Bradley & Drendel, John S. Drendel, Reno, Nev., for plaintiffs.

Vargas, Bartlett & Dixon, Albert F. Pagni, Reno, Nev., for Griebel.

ORDER

BRUCE R. THOMPSON, District Judge.

The defendant Elvin Royal Griebel has moved this Court for partial summary judgment pursuant to Rule 56, F.R.C.P., to preclude plaintiffs from recovering from defendant those damages plaintiffs could have recovered under no-fault insurance coverage had plaintiffs, in fact, maintained such coverage. Defendant contends that as to these damages, there exists no genuine issue as to any material fact.

This action is the result of a December 19, 1976 automobile accident between plaintiffs, Eddie and Arline Surman, and defendant Griebel in Incline Village, Nevada. Both plaintiffs, citizens of the State of Nevada, sustained injuries, and have brought this action against defendant Griebel, a citizen of California. Liability is not an issue before this Court and has been admitted in the Pretrial Order by defendant Griebel.

At the time of the above-mentioned automobile accident, the plaintiffs were not insured nor had they qualified themselves as self-insured as required by N.R.S. 698.190 (1973) [Appendix]. The sole issue before this Court is whether the plaintiffs' failure to comply with the security provisions of N.R.S. 698.190 (1973) should preclude them from recovering in tort those damages which could have been recovered from plaintiffs' insurer had plaintiffs been, in fact, insured.

This Court is called upon to decide a question of state law by attempting to interpret the legislative intent behind Nevada's Motor Vehicle Insurance Act. N.R.S. 698.010 (1973), et seq. The issue is novel, and one of first impression to Nevada courts.

An extensive discussion of the no-fault insurance concept is not necessary for purposes of this order. There exists a great profusion of treatises and law review articles which are devoted to such discussions. See, generally, *No Fault Insurance*, Am.Jur. —New Topic Service (1973). Essentially, a no-fault insurance plan is one in which reparation for injury is made to the insured by

the insurer independently of, or with only qualified dependence on, conventional tort liability considerations.

■ In reviewing the applicable provisions of Nevada's Motor Vehicle Insurance Act, in pari materia, it can be gleaned that its passage was designed to serve several distinct purposes.

1. To afford reparation, or at least partial reparation, for the objectively provable economic losses resulting from automobile accidents. N.R.S. 698.230 (1973).

2. To abolish tort liability for motor vehicle accidents, at least to the extent of the reparation benefits received. N.R.S. 698.-280 (1975).

3. To make personal injury insurance mandatory (or satisfy self-insurance security requirements) by requiring every owner of an automobile to obtain first party insurance coverage for personal injury protection benefits payable by his insured. N.R.S. 698.190 (1973); N.R.S. 484.263 (1975) [Appendix].

4. To provide a dependable and expedient method of recovery to parties injured in automobile accidents regardless of fault.

Of particular import in deciding this issue is the clear and unequivocal language appearing in N.R.S. 698.280(1) (1975).

Tort liability abolished; exceptions.

1. Tort liability with respect to accidents occurring in this state and arising from the ownership, maintenance or use of a motor vehicle is abolished except as to:

(a) Liability of the owner of a motor vehicle involved in an accident if security covering the vehicle was not provided at the time of the accident;

(b) Liability of a person in the business of selling, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising from a defect in a motor vehicle caused or not corrected by an act or omission in selling, manufacturing, repairing, servicing or other maintenance of a vehicle in the course of his business;

(c) Liability of a person for intentionally caused harm to person or property;

(d) Liability of a person for harm to property including, but not limited to, a motor vehicle and its contents;

(e) Liability of a person from harm to an operator of or passenger on a motorcycle as defined in NRS 482.070;

(f) Liability of a person for harm to an operator of or passenger on a moped as defined in NRS 482.069;

(g) Liability of a person in the business of parking or storing motor vehicles arising in the course of that business for harm to a motor vehicle and its contents;

(h) Damages for any loss not recoverable as basic reparation benefits by reason of the limitation on benefits for those losses, as provided in NRS 698.070; and

(i) Damages for noneconomic detriment, but only if the medical benefits for the injured person exceed $750, or if the accident causes death, chronic or permanent injury, permanent partial or permanent total disability, disfigurement, more than 180 days of inability of the injured person to work in his occupation, fracture of a major bone, dismemberment or permanent loss of a body function.

With the exception of subsections (h) and (i) of this statute, none of the exceptions is arguably applicable to owners of motor vehicles who do not maintain the requisite no-fault coverage. Although plaintiffs contend that recovery under the no-fault system is simply an expedient alternative to proceeding in tort, the unambiguous language of N.R.S. 698.280 (1975) does not support this premise. Nor does it appear that the omission of uninsured motorists from the nine exceptions to this statute was a legislative oversight.

Subsection (h) must be read in conjunction with N.R.S. 698.070 (1973), which provides, in pertinent part:

"Benefits payable" include the following defined benefits not to exceed $10,000 per person per accident.

Subsection (i) merely permits the maintenance of a tort action for noneconomic detriment if certain thresholds are met.

Taken together, these statutes support the conclusion that uninsured owners of motor vehicles are precluded from recovering in tort those damages which could have been recovered from their insurer had such no-fault coverage been maintained. As it applies to the present fact situation, defendant Griebel would have no tort liability to each plaintiff for basic reparation benefits up to the limits imposed by N.R.S. 698.070 (1973), i. e., $10,000. To hold otherwise, would be contrary to the legislative intent of requiring every owner of a motor vehicle to maintain no-fault insurance coverage, or qualify as self-insured. N.R.S. 698.280(1)(a) (1975); N.R.S. 698.-380(4) (1973); N.R.S. 698.190 (1973); accord., Uniform Motor Vehicle Accident Reparation Act, § 18(d). When the statutory language is clear and unambiguous it should be given literal effect. See: *Eason v. Farmers Ins. Co., Inc.*, 221 Kan. 415, 560 P.2d 117, 124 (1977); *Farm & City Ins. Co. v. Am. Stand. Ins. Co. of Wis.*, 220 Kan. 325, 552 P.2d 1363, 1367 (1976). To permit an uninsured motorist to recover basic reparation benefits would not be consistent with the criminal sanctions imposed on motorists who fail to comply with the provisions of N.R.S. 698.190 (1973). See, N.R.S. 484.263 (1975) [Appendix]. It is not unreasonable to preclude the plaintiffs from recovering a portion of their damages inasmuch as they have operated their vehicle in violation of Nevada law, and further have made no contribution to the automobile injury compensation system designed to spread the risk of loss among all who drive. *Accord., Montgomery v. Daniels*, 38 N.Y.2d 41, 378 N.Y.S.2d 1, 19, 340 N.E.2d 444 (1975).

Accordingly,

*IT HEREBY IS ORDERED* that defendant's motion for partial summary judgment be, and hereby is, granted.

### APPENDIX

698.190 Required security.

1. Every owner of a motor vehicle registered in this state, or operated in this state by him or with his permission, shall continuously provide with respect to the motor vehicle while it is either present or registered in this state, and any other person may provide with respect to any motor vehicle, by a contract of insurance or by qualifying as a self-insurer, security for the payment of basic reparation benefits in accordance with this chapter and security for payment of tort liabilities, arising from maintenance or use of the motor vehicle.

2. Security may be provided by a contract of insurance or by qualifying as a self-insurer in compliance with chapter 485 of NRS.

698.230 Right to reparation benefits: Where accident occurs within state. If the accident causing injury occurs in this state, every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to basic reparation benefits unless such benefits are excluded under the provisions of NRS 698.340.

698.380(4)

A person who does not comply with the requirement of providing security for the payment of basic reparation benefits, as provided in NRS 698.190, and a person as to whom such security is invalidated because he is disqualified from receiving basic reparation benefits under NRS 698.340, is not entitled to receive basic reparation benefits from the assigned claims plan.

484.263 Unlawful to operate vehicle without security required by Nevada Motor Vehicle Insurance Act. It is unlawful for any person to operate a motor vehicle registered in this state without having security covering the vehicle as required by chapter 698 of NRS.