**Dana O. MONROE, Appellant,**

v.

**Anthony Paul FOREMAN, Appellee.**

No. 87–122.

District of Columbia Court of Appeals.

Argued Oct. 21, 1987.

Decided March 25, 1988.

---

Henry R. Berger, with whom J. Phillip Kessel, Washington, D.C., was on the brief, for appellant.

Karen R. Sistrunk, with whom Ronald C. Jessamy, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, BELSON and STEADMAN, Associate Judges.

NEWMAN, Associate Judge:

This is an appeal from an Order of the Superior Court granting summary judgment in favor of defendant, Anthony Paul Foreman, in a negligence action brought by Dana O. Monroe, as a result of a motor vehicle accident. In determining whether summary judgment was properly entered against Monroe, the principal issue we are called upon to decide is one of first impression in this court—whether a resident of the District of Columbia, who failed to maintain insurance required by the Compulsory/No Fault Motor Vehicle Act, D.C.Code §§ 35–2101 through 2113 (1985 Supp.), may maintain a negligence action against a resident insured motorist to recover for injuries and damages suffered in an automobile accident in the District of Columbia, including losses which would have been recoverable under an insurance policy for the payment of personal injury protection benefits.[1] We affirm.

## I.

At all times relevant herein, the parties were residents of the District of Columbia, and the respective owners of the motor vehicles they were operating at the time of the accident. In his complaint, Monroe alleged that he was ineligible for personal injury protection [hereinafter "PIP"] benefits because he was an uninsured motorist at the time of the accident; he concludes that he was not subject to the civil restriction of the Compulsory/No Fault Motor Vehicle Act, D.C.Code §§ 35–2101 through 2113 (1985 Supp.) [hereinafter the "No–Fault Act"]. Foreman sought summary judgment contending that the action was statutorily barred. Specifically, Foreman asserted that under the No–Fault Act, the negligence action could not be maintained because: (1) Monroe did not incur medical expenses in excess of the $5,000.00 medical threshold; (2) Monroe did not claim nor offer any proof of any permanent injury or impairment; and (3) Monroe's status as an uninsured motorist precluded his recovery of PIP benefits and barred him from maintaining the negligence action.[2] In opposing the motion for summary judgment, Monroe

1. We note that while this case involves District of Columbia residents, the No–Fault Act applies equally to non-residents as well. See note 4, *infra.*

2. The No–Fault Act restricts those instances where a civil suit based upon liability may be instituted. D.C.Code § 35–2105(a) (1985 Supp.); see discussion *infra.* However, D.C.Code § 35–2105(b) (1985 Supp.) sets forth six exceptions to the civil restriction barring a tort action. This statutory provision reads, in relevant part, as follows:

   (4) A person may be liable for noneconomic loss, in accordance with otherwise applicable law, caused a victim and arising from the maintenance or use of a motor vehicle if the victim suffered an injury directly resulting in substantial permanent scarring or disfigurement; substantial and medically demonstrable permanent impairment which has significantly affected the ability of the victim to perform his or her professional activities or usual and customary daily activities; or a medically demonstrable impairment that prevents the victim from performing all or substantially all of the material acts and duties which constitute his or her usual and customary daily activities for more than 180 continuous days;

   (6) A person may be liable for any noneconomic loss if medical expenses of a victim or his or her survivors exceeds $5,000, inclusive of diagnostic x-ray costs. This amount shall be adjusted annually to reflect changes in cost of living index, pursuant to rules issued by the Superintendent.

   Five of the six exceptions pertain to noneconomic loss. Noneconomic loss is defined as "pain, suffering, inconvenience, physical or mental impairment, and other nonpecuniary damage recoverable under the tort law applicable to injury arising out of the maintenance or use of a motor vehicle." D.C.Code § 35–2102(19) (1985 Supp.). Monroe also seeks recovery for his pain and suffering. See page 14, *infra.*

argued that there was a genuine factual dispute and that Foreman was not entitled to summary judgment as a matter of law.

## II.

In 1982, the Council of the District of Columbia enacted the No–Fault Act, D.C. Code §§ 35–2101 through 35–2113 (1985 Supp.).[3] The No–Fault Act mandated that residents and nonresidents, owning or operating motor vehicles in the District of Columbia, maintain, among other things, insurance paying PIP benefits. D.C.Code § 35–2103(a) & (b)(1) (1985 Supp.).[4] The No–Fault Act also restricted the common law right to institute a tort action. D.C. Code § 35–2105(a) (1985 Supp.). Monroe admits that he has neither incurred medical expenses in excess of $5,000.00 nor sustained any permanent injury or impairment.[5] Accordingly, the issue before us is one of law.

D.C.Code § 35–2105 (a) (1985 Supp.) provides:

(a) *Restriction.—[N]o person may maintain a civil action* based on liability against any other person, with respect to an injury *as to which personal injury protection benefits are payable under this chapter.* (Emphasis added.)

D.C.Code § 35–2106 (d) & (e) (1985 Supp.), which pertain to eligibility and ineligibility for PIP benefits, read, in relevant part, as follows:

(d) *Eligibility for benefits.*—Except as otherwise provided in subsection (e) of this section, personal injury protection benefits are payable by the applicable insurer or assigned claims plan for any victim if the accident involved occurs in the District. . . .

(e) *Ineligibility for benefits.*—(1) No personal injury protection benefits shall be paid with respect to any victim if that victim:

(A) Is, as of the date of the accident, the owner of a motor vehicle involved in the accident resulting in that victim's injury; and

(B) Failed, as of the date of the accident, to provide and maintain insurance for payment of the benefits required by this chapter for personal injury protection.

Monroe contends that the plain reading of these statutory provisions means that he is not subject to the civil restriction because he is ineligible for PIP benefits. Monroe further argues that in the absence of an express declaration abrogating his common law right to institute the negligence action, his right to do so still exists. In contrast, Foreman contends that these statutory provisions must be read in *pari materia* with

---

3. In 1985, the No–Fault Act was amended making personal injury protection coverage optional and substantially altering the restrictions imposed on instituting a tort action for noneconomic losses. D.C.Code § 35–2105(b) (1987 Supp.); *see Dimond v. District of Columbia,* 253 U.S.App.D.C. 111, 116, 792 F.2d 179, 184 (1986) (upholding the No–Fault Act's medical threshold). The amendments became effective on March 4, 1986. D.C.Code § 35–2105(h) (1987). The amendments are not applied retroactively. *See Johnson v. Collins,* 516 A.2d 196, 198 n. 3 (D.C.1986); *Dimond v. District of Columbia, supra,* 253 U.S.App.D.C. at 117, 792 F.2d at 185. The accident, which is the subject of this appeal, occurred on February 1, 1986. Therefore, the unamended No–Fault Act is applicable to this appeal.

4. D.C.Code § 35–2103(a) (1985 Supp.) provides:

*Residents of District.*—Each owner of a motor vehicle required to be registered or obtain a reciprocity sticker in the District shall maintain insurance for payment of the benefits required by this chapter for personal injury protection, property damage liability protection, 3rd–party liability coverage for accidents occurring outside of the District, and uninsured motorist protection. This insurance shall be in effect continuously during the motor vehicle's period of registration or reciprocity.

D.C.Code § 35–2103(b)(1) (1985 Supp.) states as follows:

*Nonresidents of District owning or operating motor vehicles in District.*—(1) A person who is not a resident of the District who owns a motor vehicle shall not operate the motor vehicle, or permit the motor vehicle to be operated in the District, unless insurance for payment of the benefits required by this chapter for personal injury protection, property damage liability protection and uninsured motorist protection is provided and maintained during the time that the motor vehicle is present in the District.

5. Monroe has only incurred medical expenses in the amount of $1,411.25.

the entire No–Fault Act. Foreman asserts that such a reading reveals a legislative intent to preclude Monroe, an uninsured motorist, from recovering PIP benefits and maintaining a negligence action.

In reviewing an order granting summary judgment, we must conduct an independent review. *Williams v. Gerstenfeld,* 514 A.2d 1172, 1175 (D.C.1986); *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). Therefore, like the trial court, we must decide whether there is "no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *Williams v. Gerstenfeld, supra,* 514 A.2d at 1176; *Nader v. de Toledano,* 408 A.2d 31, 41 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, (1980); *Burch v. Amsterdam Corp.,* 366 A.2d 1079, 1083–84 (D.C.1976).

When we are called upon to interpret a statute, as we are here, our primary task is to be consistent with the legislative intent. *See Nova University v. Educational Inst. Licensure Comm'n,* 483 A.2d 1172, 1179–80 (D.C.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 65 (D.C.1980) (en banc); *District of Columbia National Bank v. District of Columbia,* 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (1965). We must "look at the language of the statute itself to see if it is plain and can rationally bear only one meaning, ... for generally the intent of the legislature can be found in the language used in the statute." *Barbour v. District of Columbia Dep't of Employment Servs.,* 499 A.2d 122, 125 (D.C.1985); *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); *Varela v. Hi–Lo Powered Stirrups, Inc., supra,* 424 A.2d at 65; *Peoples Drug Store, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C.1983) (en banc). Our review is not limited to reading isolated provisions of the No–Fault Act because such a review may not reveal the true legislative intent. *See Howard v. Riggs National Bank,* 432 A.2d 701, 709 (D.C. 1981); *see also Carey v. Crane Serv. Co.,* 457 A.2d 1102, 1105 (D.C.1983). "It is an accepted principle of law that a statute is to be construed in the context of the entire legislative scheme." *Floyd E. Davis Mortgage Corp. v. District of Columbia,* 455 A.2d 910, 911 (D.C.1983) (citation omitted).

■ At common law, Monroe could maintain this negligence action. Therefore, to adopt the construction of the No–Fault Act urged upon us by Foreman would, indeed, constitute an abrogation of this common law right. There is, however, a presumption against such an abrogation. *See Scharfeld v. Richardson,* 76 U.S.App.D.C. 378, 379, 133 F.2d 340, 341 (1942). We have stated that "no statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express." *Dell v. Department of Employment Servs.,* 499 A.2d 102, 107 (D.C.1985) (quoting *Shaw v. Railroad Co.,* 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1880)). Because this is a rebuttable presumption, "[t]he rule that statutes in derogation of the common law are to be strictly construed does not require such an adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given to the measure." *Jamison v. Encarnacion,* 281 U.S. 635, 640, 50 S.Ct. 440, 442, 74 L.Ed. 1082 (1930); *cf. Tredway v. District of Columbia,* 403 A.2d 732 (D.C.) (common law right to institute tort action has been statutorily restricted in workers compensation cases), *cert. denied,* 444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 92 (1979). Consequently, our task remains the same—to ascertain and adhere to the legislative intent.

It is undisputed that Monroe was the owner of the motor vehicle involved in the February 1, 1986 accident and that he did not have insurance for the payment of PIP benefits at the time of the accident. Therefore, Monroe cannot receive any payment of PIP benefits. D.C.Code § 35–2106(e) (1985 Supp.). The plain and ordinary meaning of D.C.Code § 35–2106(e) (1985 Supp.) supports this conclusion. Nonetheless, to conclude that Monroe cannot be paid PIP benefits does not end our inquiry. We must still determine the meaning of D.C.

Code § 35–2106(d) (1985 Supp.). Adhering to the proposition that "generally the intent of the legislature can be found in the language used in the statute," we view the definition of the term "eligibility" found in D.C.Code § 35–2106(d) (1985 Supp.) crucial to the proper resolution of this appeal. *Barbour v. District of Columbia Dep't of Employment Servs., supra,* 499 A.2d at 125 (citation omitted).

We must initially look to the statute itself to determine the meaning of the term "eligibility". *See id.* This term is not statutorily defined. *See* D.C.Code § 35–2102 (1985 Supp.). As a result, we must then attempt to define the term "eligibility" in accordance with its plain and ordinary meaning. *See Stuart v. American Security Bank,* 494 A.2d 1333, 1338 (D.C.1985); *United States v. Bailey,* 495 A.2d 756, 760 (D.C.1985); *Barbour v. District of Columbia Dep't of Employment Servs., supra,* 499 A.2d at 125; *Swinson v. United States,* 483 A.2d 1160, 1163 (D.C.1984). This court has not previously defined the term "eligibility" as set forth in the No-Fault Act; we do so today.

■■■ The plain and ordinary meaning of the term "eligibility" is "the quality or state of being eligible." Webster's Third New International Dictionary 736 (3d ed.

1969). "Eligible" is defined as "fit and proper to be chosen ... [or] capable of serving." Black's Law Dictionary 467 (5th ed. 1979).[6] Placing the plain and ordinary definition of the term "eligibility" in context of the No–Fault Act, we are satisfied that "eligibility" means *fit or capable of procuring insurance for the payment of PIP benefits.* First, D.C.Code § 35–2106(d) (1985 Supp.) refers to PIP benefits which are *payable.* This language carries with it the concept of capable of being paid. Second, the No–Fault Act mandates every resident, who owns a motor vehicle required to be registered in the District of Columbia, to maintain insurance paying PIP benefits.[7] D.C.Code § 35–2103(a) (1985 Supp.). Because Monroe was required to procure insurance, PIP benefits were payable to him. This status is what triggered Monroe's eligibility for PIP benefits under D.C.Code § 35–2106(d) (1985 Supp.), and not the actual procurement of the required insurance.[8] Since D.C.Code § 35–2105(a) restricts an individual from bringing a tort action "with respect to an injury as to which personal injury protection benefits are *payable "*— eligible—Monroe may not maintain this tort action.[9]

Several jurisdictions have addressed the issue of whether a noncomplier, who is unable to recover PIP benefits, may recov-

**6.** *See Hughes v. Kerfoot,* 175 Kan. 181, 263 P.2d 226, 229 (1953) ("'Eligible' thus expresses the idea of potentiality rather than of realization."); *Schroeder v. Meridian Improvement Club,* 36 Wash.2d 925, 221 P.2d 544, 548 (Wa.1950) ("'Eligible' means suitable, qualified, fit, worthy, capable of being chosen.... But merely being eligible for membership does not entitle them to maintain this action.").

**7.** See note 4, *supra.*

**8.** We have stated with respect to the Federal Employees' Compensation Act, "if the injury *is* covered by the Act, the general rule is that the compensation act remedy is exclusive, even though under the facts of the particular case no compensation is payable or even though the compensation act fails to provide for the full extent of the employee's damages." *Cf. Tredway v. District of Columbia, supra,* 403 A.2d at 734–35; *Hubbard v. Reynolds Metals Co.,* 482 F.2d 63, 64 (9th Cir.1973). This rationale applies equally to the No–Fault Act. D.C.Code § 35–2106(e) (1985 Supp.) places a limitation upon the actual receipt or recovery of PIP benefits. See pages 5–6, *supra.* This is separate and

distinct from the question of who is fit or eligible to procure insurance for the payment of PIP benefits. D.C.Code § 35–2106(d) (1985 Supp.).

Our decision today is also consistent with *Johnson v. Collins, supra* note 3, 516 A.2d at 196, relied upon by Monroe. We held that Johnson, a taxicab driver, could not maintain a tort action. We found that Johnson potentially could have recovered PIP benefits from Collin's insurer by applying and submitting proof in support of his claim. *Id.* at 198. We did not condition Johnson's eligibility upon his actual receipt of PIP benefits nor do we condition Monroe's eligibility upon his actual receipt of PIP benefits.

**9.** Unlike D.C.Code §§ 35–2105(a) and 35–2106(d) (1985 Supp.), D.C.Code § 35–2106(e) (1985 Supp.) does not contain the language "payable." Rather, this provision states that PIP benefits "shall not be paid" to the uninsured. D.C.Code § 35–2106(e) (1985 Supp.). Thus, subsection (e) recognizes that PIP benefits are payable to the uninsured—eligibility—but restricts the actual payment.

er economic losses from a tortfeasor in a negligence action. I. SCHERMER, AUTOMOBILE LIABILITY INSURANCE § 5.02 (1987). There is no unanimity among the various jurisdictions.[10] However, the majority of the jurisdictions, which we have reviewed, disfavor such recovery. For example, in *Davidson v. Bradford*, 245 Ga. 8, 262 S.E. 2d 780 (1980), the Supreme Court of Georgia decided whether an uninsured motorist could recover for economic losses in a negligence action against an insured motorist under the Georgia [No–Fault] Act. The Supreme Court of Georgia stated that one of the purposes of the No–Fault Act was to avoid wasteful litigation of small claims. Hence, the Supreme Court of Georgia concluded that economic losses were not recoverable in a negligence action and stated the following:

> Thus, and in recognition of the legislative intent ... we hold that § 56–3410(b)'s threshold concept—"[a]ny person eligible for [no-fault] economic loss benefits" includes any person who is *required* ... to secure minimum insurance coverage as outlined in said section.

*Id.* 262 S.E.2d, at 783, *quoted in* I. SCHERMER, *supra*, § 5.02, at 5–8.

The purpose and finding provision of the No–Fault Act supports our definition of eligibility. The purpose of the No–Fault Act is to provide adequate protection to victims who are injured in accidents by motor vehicles registered or operated in the District of Columbia. D.C.Code § 35–2101(b) (1985 Supp.); *see Dimond v. District of Columbia, supra* note 3, 253 U.S. App.D.C. at 118, 792 F.2d at 186 (stating that "the statute's [the No–Fault Act] purpose of providing adequate protection may therefore be to ensure full recovery of out-of-pocket expenses."). The Council of the District of Columbia found the traditional tort litigation process time-consuming and expensive. D.C.Code § 35–2101(a)(2)(D) (1985 Supp.). The Council also found that compulsory insurance would reduce insurance rates while enhancing coverage to policyholders. D.C.Code § 35–2101(a)(3) (1985 Supp.). In fact, a victim must initially seek compensation for out-of-pocket expenses from his own insurer.[11] D.C.Code § 35–2107(a)(3) (1985 Supp.). The insurance system was designed to compensate victims for their economic losses irrespective of fault. D.C. Code § 2104(b) (1985 Supp.). For these reasons, the Council enacted the No–Fault Act mandating compulsory insurance and restricting civil suits in order that motorists and victims, such as the parties herein, would be adequately protected by making recovery of out-of-pocket expenses readily available through an insurer. Thus, our construction of the term "eligibility" is con-

---

**10.** *Surman v. Grieblel*, 439 F.Supp. 1118, 1121 (D.Nev.1977) ("uninsured owners of motor vehicles are precluded from recovering in tort those damages which could have been recovered from their insurer had such no-fault coverage been maintained."); *Stone v. Montgomery*, 618 S.W.2d 595, 598 (Ky.App.1981) ("[b]ecause every motorist is deemed to have consented to the Act's provisions, this limited abolition of tort liability applies regardless of whether the injured motorist is insured or uninsured."); *Atchison v. Overcast*, 563 S.W.2d 736, 737 (Ky.App. 1978) (noncomplier is not entitled to recover for economic loss unless he or she has previously rejected in writing the limitations upon tort rights); *Rehnelt v. Stuebe*, 397 N.W.2d 563, 566 (Minn.1986) ("holding that the failure to have no fault insurance bars ... tort actions for economic loss benefits covered by the no fault act...."). *Contra Erie Ins. Co. v. Bushy*, 394 So.2d 228, 230 (Fla.App.1981) (held that under the insurance policy a set-off was unwarranted merely because the plaintiff was a noncomplier); *Lisi v. Parnell*, 201 N.J.Super. 321, 493 A.2d 40, 44 (App.Div.1985) (stating an uninsured motorist may "recover direct, consequential, or special damages, except, and this applies to insured motorists as well, in the circumstance where the $200 'threshold' was not reached.")

**11.** D.C.Code § 35–2107(a)(3) (1985 Supp.) states as follows:

> (a) The insurer responsible for the payment of personal injury protection benefits shall be determined in accordance with, and in the order of, the priorities set forth in this section. The insurer liable to pay benefit is: 3) The insurer providing required insurance under which the victim is an insured;

*Id.; see Dimond v. District of Columbia, supra* note 3, 253 U.S.App.D.C. at 118, 792 F.2d at 186; *see also Stein, "Gee, Today Was A Bad Day ... But It's Nobody's Fault",* District Lawyer, Mar.–Apr. 1984, at 40, 44 (stating that a "cardinal principal of the No–Fault Act is that every insured is purchasing first party PIP benefits and will look first to his own insurance company for those payments.").

sistent with the Council's objective because it is not based upon fault, it does not encompass the time-consuming and expensive nature of tort litigation, and it potentially aids in the reduction of insurance rates and the enhancement of insurance coverage. On the other hand, Monroe's argument is inconsistent with the legislative intent.

Monroe also argues that the possibility of being prosecuted for failing to maintain the required insurance and the time-consuming and expensive nature of the tort litigation process were the only penalties the legislature intended to impose for his noncompliance with the No–Fault Act. D.C.Code § 35–2113(a)(2) (1985 Supp.). In sum, Monroe concludes that it was not the legislative intent to penalize the uninsured motorist further by abrogating the common law right to maintain a negligence action. We disagree with his conclusion. First, it was unnecessary for Monroe to be involved in an accident to be prosecuted for violating the No–Fault Act.[12] See D.C. Code § 35–2113(a)(2) (1985 Supp.). Rather, his failure to maintain the mandatory insurance, in and of itself, would have been sufficient. Second, the ability to maintain a negligence action is not a punitive measure merely because the tort litigation process is time-consuming and expensive. Monroe somehow ignores the fact that to permit the action would also be time-consuming and expensive for Foreman, a lawfully insured motorist.

■ Finally, Monroe seeks compensation for his pain and suffering. See note 2, *supra*. We note that PIP benefits compensate a victim for medical and rehabilitation expenses, work loss, and funeral-related benefits—economic losses. D.C.Code § 35–2104 (1985 Supp.). PIP benefits do not compensate a victim for pain and suffering—a noneconomic loss. D.C.Code § 35–2102(19) (1985 Supp.) note 2, *supra*. Thus, the remaining issue to be decided is whether Monroe may recover for his pain and suffering.

In *Dimond v. District of Columbia, supra* note 3, 253 U.S.App.D.C. at 119, 792 F.2d at 187, in reference to no-fault insurance in general, the United States Court of Appeals stated:

No-fault automobile insurance seeks to compensate a larger class of victims than does the traditional tort system. Under no-fault insurance, a victim recovers his economic losses regardless of who caused the accident. By contrast, the tort system compensates only victims who can prove that another individual was at fault in causing an accident. In theory, no-fault automobile insurance finances the added cost of compensating this larger class of victims from the savings generated by limiting the number of tort suits brought. *These savings reflect both unpaid pain and suffering damages and the attorneys' fees and other transaction costs of litigation to establish fault. Thus, keeping premiums affordable while reimbursing all economic losses necessitates some restrictions on tort suits to recover noneconomic losses.* (Emphasis added.)

*Id.,* 792 F.2d at 187 (citation omitted).

The same underlying reasons for no-fault insurance in general are expressed in the No–Fault Act. See pages 741 & 742, *supra.* We agree with the United States Court of Appeals that there is a trade-off between limiting recovery for pain and suffering and making recovery for economic losses more readily available. The No–Fault Act permits a person who is eligible for PIP benefits to recover non-economic losses in a tort action only when certain statutory thresholds have been met. *See* D.C.Code § 35–2105(b) (1985 Supp.); *see also Dimond v. District of Columbia, supra* note 3, 253 U.S.App.D.C. at 118, 792 F.2d at 186. We find that this trade-off applies to the uninsured. Monroe admits that his claim does not fall within any of the statutory exceptions. See page 738, *supra.* Accordingly, Monroe cannot recover for his pain and suffering.

---

**12.** D.C.Code § 35–2113(a)(2) states that "the owner of a motor vehicle that is required to be registered or obtain a reciprocity sticker in the District and required insurance is not in effect with respect to that motor vehicle" is guilty of an offense under the No–Fault Act.

## III.

In conclusion, the parties were members of the same class—residents required to maintain insurance for the payment of PIP benefits. Foreman did incur the out-of-pocket expenses for insurance in order that his economic losses—PIP benefits—for the accident would be paid. On the other hand, Monroe did not incur the out-of-pocket expenses for this type of insurance. Rather, Monroe seeks payment of his economic losses—PIP-type benefits—from Foreman. We find that the legislature has fairly expressed its intentions to bar an uninsured motorist from recovering losses which are equivalent to PIP type benefits in a negligence action against an insured motorist. *See Dell v. Department of Employment Servs., supra,* 499 A.2d at 107; *Shaw v. Railroad Co., supra,* 101 U.S. at 565. We further find that the legislature has expressed this same intent to bar an uninsured motorist from recovering for his pain and suffering, except when the statutory thresholds have been met. D.C.Code § 35–2105(b) (1985 Supp.). To permit Monroe to maintain this action "defeat[s] the obvious legislative intent" as set forth in the No–Fault Act itself. *See Jamison v. Encarnacion, supra,* 281 U.S. at 640, 50 S.Ct. at 442. Therefore, we hold that Monroe was eligible for PIP benefits under D.C.Code § 35–2106(d) (1985 Supp.). Consequently, he is subject to the civil restriction in D.C.Code § 35–2105(a) (1985 Supp.) and cannot maintain his negligence action. For the reasons stated, the order granting summary judgment in favor of defendant, Foreman, is affirmed.